UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
GEORGE R. CHRISTIANSEN,

                    Plaintiff,
                                          MEMORANDUM & ORDER
          -against-                       15-CV-2932 (JS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
--------------------------------------X
APPEARANCES
For Plaintiff:      John W. DeHaan, Esq.
                    The DeHaan Law Firm P.C.
                    300 Rabro Drive East, Suite 101
                    Hauppauge, NY 11788

For Defendant:      Matthew Silverman, Esq.
                    United States Attorney's Office
                    271 Cadman Plaza East, Seventh Floor
                    Brooklyn, NY 11201

SEYBERT, District Judge:

          Plaintiff George R. Christiansen ("Plaintiff") brings

this action pursuant to Section 405(g) of the Social Securities

Act, 42 U.S.C. § 405(g), challenging the Commissioner of Social

Security's (the "Commissioner") denial of his application for

Social Security disability insurance benefits.  Presently before

the Court are the Commissioner's motion for judgment on the

pleadings (Docket Entry 11) and Plaintiff's cross-motion for

judgment on the pleadings (Docket Entry 14).  For the following

reasons, the Commissioner's motion is DENIED, Plaintiff's motion

is GRANTED, and this matter is REMANDED to the Commissioner for

further consideration in accordance with this Memorandum and Order.

BACKGROUND[1]

I.  Procedural Background

On September 20, 2012, Plaintiff filed for social security disability benefits, claiming a disability since October 15, 2010. (R. 12.) Plaintiff alleges that he is disabled based on back pain. (R. 15.) Plaintiff's application was denied on December 18, 2012, and on January 9, 2013, he requested a hearing before an administrative law judge. (R. 12.) The hearing took place on October 15, 2013 before Administrative Law Judge April Wexler (the "ALJ"). (R. 12, 19.) Plaintiff was represented by counsel at the hearing and the ALJ heard testimony from Plaintiff and Walter J. Mueller, a vocational expert.[2] (R. 25, 41.)

On December 20, 2013, the ALJ issued a decision finding that Plaintiff is not disabled. (R. 19.) On February 12, 2014, Plaintiff sought review of the ALJ's decision by the Appeals Council. (R. 7-8.) On March 27, 2015, the Appeals Council denied

---

[1] The background is derived from the administrative record filed by the Commissioner on August 17, 2015. (Docket Entry 7.) "R." denotes the administrative record.

[2] The ALJ's decision states that Rocco J. Meola appeared at the hearing. (R. 12.) However, the transcript of the hearing indicates that Walter J. Mueller testified by telephone. (R. 41.)

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. 1-6.)

Plaintiff then commenced this action on May 20, 2015. The Commissioner and Plaintiff filed cross-motions for judgment on the pleadings on October 30, 2015 and November 30, 2015, respectively.  (Docket Entries 11, 14.)

## II.  Evidence Presented to the ALJ

### A.  Non-Medical Evidence

Plaintiff was forty-three years old at the time of the administrative hearing.  (R. 15.)  Plaintiff is a high school graduate with "some college."  (R. 27.)  From 1991 until 2011, Plaintiff served as a police officer for the City of New York. (R. 27.)  Plaintiff testified that he had two back surgeries--one in 2000 and one in October 2010--and he has not worked since his second surgery.  (R. 28-29.)  In 2011, Plaintiff retired from the New York City Police Department and was approved for disability retirement after he retired.  (R. 27.)  Plaintiff testified that the surgery helped, but his symptoms are "starting to progressively get worse."  (R. 30.)  He stated that when he performs repetitive actions, he suffers from swelling, pain down his legs, and numbness in his toe.  (R. 30.)  Plaintiff testified that he cannot sit or stand for long periods of time.  (R. 30.)  He takes Cyclobenzaprine, Gabapentin, and Hydrocodone daily and sees a pain management physician.  (R. 31.)

Plaintiff lives with his wife and three children in Islip, New York.  (R. 26-27.)  His typical day starts with approximately twenty minutes of stretching.  (R. 32.)  Then, Plaintiff gets his children up for school and prepares breakfast and lunch.  (R. 32.)  Plaintiff also does "light house chores around the house," such as "light laundry."  (R. 32.)  Plaintiff assists his children with their homework, but when his wife comes home "she usually takes over."  (R. 32.)  Plaintiff has a driver's license and drives.  (R. 27.)

Plaintiff also testified that his back pain limits his ability to perform certain tasks.  (R. 32-41.)  Plaintiff can make small meals but is unable to prepare large meals, (R. 40), and is unable to do any yard work, (R. 34).  He testified that he misses a lot of his children's sporting events as he cannot sit or stand for long periods of time.  (R. 32-33.)  Plaintiff is also unable to walk or drive long distances without experiencing pain.  (R. 38-39.)  Plaintiff testified that he does not visit with friends or family, does not have any hobbies, and has not taken any trips.  (R. 34-35.)

Walter J. Mueller, a vocational expert, testified at the hearing by phone.  (R. 41-44.)  The ALJ asked Mueller about a hypothetical individual who: (1) is of the claimant's age and education; (2) has the past job experience of a police officer; (3) is limited to sedentary work; (4) can occasionally lift ten

pounds; (5) is able to sit for approximately six hours; (6) is able stand or walk for approximately two hours in an eight hour day with normal breaks; (7) occasionally climb ramps or stairs; (8) can never climb ladders, ropes, or scaffolds; (9) can occasionally balance, stoop, kneel, crouch, and crawl; and (10) has unlimited ability to push and pull. (R. 42.) Mueller testified that such a person could not perform Plaintiff's past work as a police officer, but could perform the following positions: (1) table worker, (2) order clerk, and (3) document prep worker. (R. 42-43.) However, Mueller testified that an individual who could only sit for approximately four hours and stand or walk for two would not be able to perform any jobs in the labor market. (R. 43.)

B. <u>Medical Evidence</u>

1. <u>Dr. Cohen</u>

On October 12, 2010 Dr. Cohen performed a transforaminal lumbar interbody fusion (TFIL) at L5-S1, a laminectomy at L5 and S1, and posterolateral fusion. (R. 177, 187.) On October 14, 2011, a year after surgery, Plaintiff returned to Dr. Cohen. (R. 285.) Plaintiff reported that he had improved sixty percent since the surgery and that epidural steroid injections had helped him eighty to ninety percent. (R. 285.) Plaintiff's Oswestry

Disability index[3] score was thirty percent which is indicative of a moderate disability. (R. 285.) Plaintiff rated his lower back pain as ranging from 3-5/10 and leg pain as ranging from 2-4/10. (R. 285.) Plaintiff was taking Flexeril, Neurontin, and Ibuprofen daily. (R. 285.)

Plaintiff returned to Dr. Cohen on October 26, 2012, approximately two years after surgery. (R. 283.) Dr. Cohen reported that Plaintiff's "preoperative bilateral lower extremity pain, weakness, and dysfunction have significantly improved" but Plaintiff suffered some leg pain and back pain to the right of his midline. (R. 283.) Plaintiff reported lower back pain ranging from 5-6/10 and leg pain ranging from 3-4/10 as well as tenderness over the right L5 screw. (R. 283.) Dr. Cohen noted that Plaintiff's Oswestry Disability Questionnaire score was fifty-one percent. (R. 283.)

On January 25, 2013, Dr. Cohen reported that Plaintiff has seen at least an eighty percent improvement in his preoperative symptoms of bilateral leg pain, weakness, and dysfunction. (R. 281.) Plaintiff reported that his lower back pain ranged from 3-

---

[3] "The Oswestry Disability index is a condition-specific outcome measure used in the management of spinal disorders." Nelson v. Astrue, No. 11-CV-3346, 2012 WL 7761489, at *3, n.3 (D. Minn. Dec. 12, 2012), report and recommendation adopted, 2013 WL 1104265 (D. Minn. Mar. 18, 2013). A score between forty to sixty percent is considered a "'severe disability' whereby pain is the main problem, but the patient's daily activities are also limited." Id. (citation omitted).

4/10, his right leg pain ranged from 2-3/10, and his left leg pain ranged from 3-4/10. (R. 281.) Plaintiff further reported "significant improvement in his preoperative symptoms" but also reported pain at the site of his construct screw that was not relieved by epidural injections. (R. 282.) Dr. Cohen also noted that Plaintiff suffered from radiating pain in his right leg when "sitting for any length of time." (R. 281.) Plaintiff's Oswestry Disability Index score was fifty-one percent or severe. (R. 281.)

On February 22, 2013, Plaintiff saw Dr. Cohen and reported a "slight improvement" in the pain in his lower right lumbar spine. (R. 279.) Plaintiff reported that the surgery helped him seventy to eighty percent and his lower back pain that radiates down his legs is "not significantly bothersome." (R. 279.)

2. Dr. Rubin

On November 11, 2010, in response to lower back pain after his surgery, Plaintiff began receiving treatment from Dr. Edward Rubin, M.D., a pain management specialist. (R. 228-29.) Plaintiff reported sharp, radiating pain that is continuous and "aggravated by activity." (R. 228.) Plaintiff also reported that medications help his pain. (R. 228.) Dr. Rubin prescribed Plaintiff Percocet, Lyrica, and Gabapentin. (R. 229.) Plaintiff visited Dr. Rubin on December 9, 2010, February 7, 2011, May 5, 2011, and June 30, 2011. (R. 231-42.) Plaintiff reported that

the severity of the pain was 3/10 to 4/10 on average. (R. 195, 231-42.) Dr. Rubin continued to prescribe Plaintiff Percocet, Lyrica, and Gabapentin until May 5, 2011, when Dr. Rubin stopped prescribing Plaintiff Percocet and Lyrica, and started Plaintiff on Ibuprofen. (R. 232, 235, 238.)

On July 6, 2011, Dr. Rubin administered an epidural steroid injection into Plaintiff's back. (R. 198, 243.) On July 28, 2011, Plaintiff reported pain of 4/10 on average and a fifty percent improvement as a result of the injection. (R. 245.) Dr. Rubin also prescribed Plaintiff Flexril and continued prescribing Gabapentin and Ibuprofen. (R. 246.)

On August 10, 2011, Dr. Rubin administered another epidural steroid injection. (R. 248.) On August 31, 2011, Plaintiff saw Dr. Rubin and reported pain of 2/10 on average and an eighty to ninety percent improvement at rest after the injection. (R. 250.) Dr. Rubin continued to prescribe Gabapentin, Ibuprofen, and Flexril, and also gave Plaintiff a prescription to start Percocet. (R. 251.)

During a November 28, 2011 visit with Dr. Rubin, Plaintiff reported that his back pain was 2/10 at best and 8/10 at worst. (R. 253.) Plaintiff reported that he recently flared his lower back by trying to jog on a treadmill. (R. 253.) Dr. Rubin continued Plaintiff on Gabapentin, Ibuprofen, Flexeril, and Percocet. (R. 254.) On March 22, 2012, Plaintiff reported that

his back pain was 1/10 at best and 5/10 at worst.  (R. 256.)  Dr. Rubin continued Plaintiff on the same drug regimen.  (R. 257.)

On June 28, 2012, Plaintiff saw Dr. Rubin and rated his pain as 3/10 at best and 7/10 at worst.  (R. 259.)  Plaintiff reported "increased low back pain with 'lump.'"  (R. 259.)  Dr. Rubin opined that the bump in Plaintiff's lower back was likely prosthetic from his previous surgery. (R. 260.)  On October 1, 2012, Plaintiff returned to Dr. Rubin and described his pain as 3/10 at best and 7/10 at worst.  (R. 262.)  Dr. Rubin noted that an x-ray revealed "no hardware loosening."  (R. 262.)  However, Dr. Rubin noted Plaintiff continued to complain of lower back pain and a "lump" in his right lower back.  (R. 263.)  Dr. Rubin referred Plaintiff to Dr. Cohen for a reevaluation and continued to prescribe Gabapentin, Flexeril, and Percocet.  (R. 263.)

From December 6, 2012 through September 4, 2013 Plaintiff visited Dr. Rubin or Thomas Biley, a physician's assistant in Dr. Rubin's practice, six times.  (R. 287-304.) During those visits Plaintiff reported that his pain ranged from 3/10 to 4/10 at best and 7/10 at worst. (R. 287, 290, 293, 296, 299, 302.)

On November 7, 2013, Dr. Rubin completed a "Medical Assessment of Ability to Do Work Related Activities" questionnaire.  (R. 305-06.)  Dr. Rubin stated that Plaintiff can lift up to fifteen pounds, lift ten pounds for up to one-third of

an eight hour day, and cannot lift any weight from one-third to two-thirds of an eight hour day. (R. 305.) Further, Dr. Rubin found that Plaintiff can stand, walk, or sit for ten minutes without interruption, and stand, walk, or sit for a total of eighty minutes in an eight hour work day. (R. 306.) Dr. Rubin also concluded that Plaintiff could never climb, stoop, kneel, balance, crouch, or crawl. (R. 306.) Additionally, Dr. Rubin found that Plaintiff's ability to push and pull is impaired, but his ability to reach, feel, speak, handle, and hear are not affected by his impairment. (R. 306.) Plaintiff's pushing and pulling is limited to fifteen pounds. (R. 306.)

### 3. Dr. Shtock

On December 5, 2012, Dr. Chaim Shtock, D.O., conducted an orthopedic examination of Plaintiff pursuant to a referral from the Division of Disability Determination. (R. 267-72.) Dr. Shtock reported that Plaintiff complained of lower back pain from "3 to 4/10 at rest to 7/10." (R. 267.) Dr. Shtock observed that Plaintiff "appeared to be in no acute distress." (R. 268.) Dr. Shtock further reported:

> The claimant has moderate limitations with heavy lifting, squatting, kneeling, and crouching, has moderate limitation with frequent stair climbing, has moderate limitation with walking a long distance, has a mild to moderate limitations with standing for long periods, mild to moderate limitations with sitting long periods, and moderate limitations with frequent bending. He has no

limitation performing overhead activities
using both arms. He has no limitation with
using his hands for fine and gross manual
activities. The claimant has no other physical
functional deficits in my opinion.

(R. 269-70.)  Dr. Shtock's report indicates that an x-ray taken on
December 5, 2012 showed "degenerative changes."  (R. 269; see also
R. 271 (noting that the x-ray showed "laminectomy and posterior
fusion with disc implant at L5-S1" and that there was no
"compression fracture").)

          4. Board Determination

          On October 11, 2011, the Medical Board Police Pension
Fund Article II (the "Board") issued a decision on Plaintiff's
application for accident disability retirement. (R. 206-11.)  The
Board concluded that it was "impossible for [Plaintiff[ to perform
the full duties of a New York City Police Officer" and recommended
that Plaintiff's application for accident disability retirement be
approved.  (R. 210.)  The Board noted that Plaintiff's final
diagnosis was "Low Back Derangement Status Post Surgery x2 with
Residuals" and that "[t]he competent causal factor is
[Plaintiff's] line of duty injury of June 24, 2010." (R. 210-11.)

                        DISCUSSION

I.   Standard of Review

          In reviewing the ruling of an ALJ, the Court does not
determine de novo whether Plaintiff is entitled to disability
benefits.  Thus, even if the Court may have reached a different

                            11

decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Persico v. Barnhart, 420 F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (internal quotations marks and citation omitted). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id. To determine if substantial evidence exists to support the ALJ's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted).

II. Determination of Disability

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C.

§ 423(a), (d).  A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, the Commissioner considers whether the claimant suffers from a "severe medically determinable physical or mental impairment" or a severe combination of impairments that satisfy the duration requirement set forth at 20 C.F.R. § 404.1509.[4]  20 C.F.R. §404.1520(a)(4)(ii).  Third, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the

---

[4] 20 C.F.R. § 404.1509 provides that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

impairments listed in Appendix 1 of the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). "These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995). Fourth, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if the claimant does not have the RFC to perform tasks in his or her previous employment, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's

educational background, age, and work experience." <u>Boryk ex rel.</u> <u>Boryk v. Barnhart</u>, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citation omitted).

III.  <u>The ALJ's Decision</u>

The ALJ applied the five-step analysis described above and determined that Plaintiff is not disabled.  (R. 12-19.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2010.  (R. 14.)

At step two, the ALJ found that Plaintiff suffered from lumbar radiculopathy, a severe impairment.  (R. 14.)

At step three, the ALJ concluded that Plaintiff's impairment did not meet or equal the severity of one of the impairments listed in Appendix 1 of the Social Security regulation. (R. 14.)  The ALJ found that Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  (R. 15.)  The ALJ further concluded Plaintiff can "occasionally lift ten pounds, sit for approximately six hours, stand or walk for approximately two hours in an eight hour workday with normal breaks; perform unlimited push/pull activities; occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs, but never climb ladders, ropes or scaffolds." (R. 15.)

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work.  (R. 17.)

Finally, at step five, the ALJ concluded that Plaintiff could perform other work existing in the national economy based on his age, education, work experience, and residual functional capacity. (R. 18.) Thus, the ALJ determined that Plaintiff was not disabled. (R. 18-19.)

In reaching her decision, the ALJ gave "only some weight" to Dr. Rubin's Medical Assessment of Ability to Do Work Related Activities, finding that it was inconsistent with his treatment notes, testing, and physical examinations demonstrating Plaintiff's improvement. (R. 17.) The ALJ also concluded that "there is nothing in the record to substantiate the claimant's inability to sit for only 80 minutes during the course of an entire day." (R. 17.) However, the ALJ afforded Dr. Shtock's opinion "great" weight based on its consistency with Dr. Cohen's records. (R. 17.) The ALJ did not reference the Board's decision.

IV. <u>Analysis of the ALJ's Decision</u>

The Commissioner filed her motion first and argues that her decision is supported by substantial evidence and she applied the correct legal standard. (<u>See</u> <u>generally</u> Def.'s Br., Docket Entry 12.) Plaintiff counters that the ALJ's decision should be reversed and remanded on the following grounds: (1) the ALJ's evaluation of the medical evidence violated the treating physician rule; (2) the ALJ failed to consider the Medical Board's findings; (3) The ALJ's RFC assessment is not supported by substantial

evidence; and (4) the ALJ did not properly evaluate Plaintiff's credibility. (Pl.'s Br. Docket Entry 14-1, at 13-25.) The Court addresses each argument below.

A.    Treating Physician's Rule

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight."[5] Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulations state:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). Nevertheless, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted).

---

[5] A "treating source" is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation, and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902.

When an ALJ does not afford controlling weight to the opinion of a treating physician, she must consider factors that include: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a plaintiff's treating physician." Id. (citing 20 C.F.R. § 416.927(d)(2)). See also Duncan v. Astrue, No. 09-CV-0442, 2011 WL 1748549, at *17 (E.D.N.Y. May 6, 2011) ("[a]n ALJ's failure to explicitly state 'good reasons' for declining to adopt a treating source's opinion, even on issues that are determined by the Commissioner, is a ground for remand").

1. Dr. Rubin

The Court finds that the ALJ failed to set forth "good reasons" for declining to give controlling weight to the opinion of Dr. Rubin. While the ALJ is not required to provide a "slavish recitation of each and every [treating physician] factor where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013), here, the ALJ failed to adequately address these factors in determining that Dr. Rubin's

opinion should only be entitled to "some weight." The ALJ merely
concluded that the record did not substantiate Plaintiff's alleged
inability to sit for only eighty minutes per day and that Dr.
Rubin's opinion "is not completely consistent with the physical
examinations showing the claimant's overall improvement and his
own treatment notes and testing." (R. 17.) However, the ALJ
failed to state the reasons why Dr. Rubin's findings were "not
completely consistent" with the record or his own treatment notes.
See, e.g., Floyd v. Colvin, No. 13-CV-4963, 2015 WL 2091871, at *8
(E.D.N.Y. May 5, 2015) ("It is not enough for the ALJ to simply
say that a treating physician's findings are unsupported by the
record; the ALJ must provide reasons which explain that
inconsistency with the[ ] other parts [of the record].") (internal
quotation marks and citation omitted; alteration in original).

Moreover, while it is appropriate to accord a treating
physician's opinion less weight based on internal inconsistency,
see Sisto v. Colvin, No. 12-CV-2258, 2013 WL 4735694, at *9
(E.D.N.Y. Sept. 3, 2013), the Court finds that Dr. Rubin's
conclusion that Plaintiff could only sit for eighty minutes per
day and is unable to climb, stoop, balance, crouch, or crawl, is
not necessarily inconsistent with treatment notes reflecting
apparent improvement. The Court acknowledges Dr. Rubin's notes
indicating an improvement following epidural steroid injections
(R. 245, 250) and that Plaintiff reported pain ranging from 1/10

at best to 5/10 at worst in March 2012 (R. 256).  However, in June
2012, Plaintiff reported pain ranging from 3/10 at best to 7/10 at
worst and complained of a lump in his lower right back.  (R. 259,
263.)  Throughout the fall of 2012 and 2013, Plaintiff continued
to report pain ranging from 3-4/10 at best and 7/10 at worst.  (R.
287-304.)  While, as addressed infra, the record requires further
development regarding Dr. Rubin's opinion, the Court finds that
pain ranging from 3-4/10 at best to 7/10 at worst is not
necessarily inconsistent with Dr. Rubin's opinion that Plaintiff
can only sit for eighty minutes per day and has certain physical
limitations.

Similarly, Dr. Rubin's finding is not necessarily
inconsistent with Dr. Cohen's treatment notes.  While Dr. Cohen
noted that as of January 2013, Plaintiff had seen at least an
eighty percent improvement in his preoperative symptoms, (R. 281),
Plaintiff reported back pain ranging from 3-4/10 and pain at the
site of his construct screw (R. 281).  Although Dr. Cohen noted in
February 2013 that Plaintiff's radiating back pain was "not
significantly bothersome," one month earlier he noted that
Plaintiff suffers from radiating pain in his right leg when
"sitting for any length of time." (R. 279, 281.)  Further, on two
occasions, Plaintiff's Oswestry Disability Index score was fifty-
one percent or severe.  (R. 281, 283.)  It is also worthy of note
that the last record of Plaintiff's treatment with Dr. Cohen is

from February 2013 (R. 279), while Dr. Rubin's assessment occurred approximately ten months later in November 2013 (R. 305-06).

Additionally, "the Court must assess whether the ALJ satisfied his threshold duty to adequately develop the record before deciding the appropriate weight of a treating physician's opinion." Khan v. Comm'r of Social Sec., No. 14-CV-4260, 2015 WL 5774828, at *13 (E.D.N.Y. Sept. 30, 2015) (citation omitted). Pursuant to regulations that took effect on March 26, 2012, the ALJ may resolve any inconsistency or insufficiency in the evidence by: (1) re-contacting the treating physician; (2) requesting additional existing records; (3) asking the claimant to undergo a consultative examination at the Commissioner's expense; or (4) asking the claimant or others for additional information. 20 C.F.R. § 404.1520b(c).[6] The Second Circuit has directed that notwithstanding the revised 20 C.F.R. § 404.1520b, "it may be incumbent upon the ALJ to re-contact medical sources in some circumstances." Khan, 2015 WL 5774828, at *14 (citing Selian, 708 F.3d at 421). In applying 20 C.F.R. § 404.1520b, courts in this Circuit have held that where additional information is needed regarding the opinion of a treating physician, the ALJ should

---

[6] However, the ALJ may choose not to seek clarification from a medical source where he or she "know[s] from experience that the source either cannot or will not provide necessary evidence." 20 C.F.R. § 416.920b(c)(1).

contact the treating source "for clarification and additional evidence." McClinton v. Colvin, No. 13-CV-8904, 2015 WL 6117633, at *23 (S.D.N.Y. Oct. 16, 2015) (collecting cases). But see Vanterpool v. Colvin, No. 12-CV-8789, 2014 WL 1979925, at *17 (S.D.N.Y. May 15, 2014) ("[b]ecause the ALJ did not reject [the treating physician's] opinion due to gaps in the record, he was not required to contact the physician for further information or clarification").

As set forth above, it is unclear whether Dr. Rubin's opinion is internally inconsistent and/or inconsistent with Dr. Cohen's treatment notes. The Court finds that the ALJ had an obligation to attempt to clarify any alleged inconsistency between Dr. Rubin's conclusion that Plaintiff could only sit for eighty minutes in an eight-hour workday and never climb, stoop, balance, crouch, or crawl and evidence in the record regarding Plaintiff's "overall improvement." (R. 17.)

Accordingly, remand is appropriate to enable the ALJ to appropriately apply the treating physician rule and to fully develop the record regarding Dr. Rubin's opinion.

2. Dr. Shtock

Plaintiff argues that to the extent Dr. Shtock's opinion is inconsistent with Dr. Rubin's opinion, Dr. Shtock's opinion should be accorded "minimal weight" because it is impermissibly vague, Dr. Shtcok has no reported board certifications and only

examined Plaintiff on one occasion. (Pl.'s Br. at 19.) The Court will address each argument in turn.

The Second Circuit has held that a physician's "use of the terms 'moderate' and 'mild,' without additional information does not permit the ALJ . . . to make the necessary inference that [the plaintiff] can perform the exertional requirement of sedentary work." Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superseded by statute as recognized by Douglass v. Astrue, 496 F. App'x 154 (2d Cir 2012). However, courts have upheld an ALJ's accordance of significant weight to a consultative physician's finding that the plaintiff suffered from "moderate" limitations where the physician's assessment "directly considered a plaintiff's capacity to, for example, sit or stand for long periods." Simmons v. Colvin, No. 15-CV-0377, 2016 WL 1255725, at *14 (E.D.N.Y. Mar. 28, 2016) (collecting cases). See, e.g., Lewis v. Astrue, 548 F. App'x 675, 677 (2d Cir. 2013) (summary order) (holding that the ALJ's determination that the plaintiff could undertake "light work" was supported by the physician's "assessment of mild limitations for prolonged sitting, standing, and walking . . . ."); Tankisi v. Comm'r. of Social Sec., 521 F. App'x 29 (2d Cir. 2013) (summary order) (rejecting the plaintiff's argument that the consultative physician's opinion that his condition was "mild to moderate" was "incomplete and vague" and noting that this opinion contained "additional clarifying

information[,]" and was supported by other evidence). Cf. Adesina v. Astrue, No. 12-CV-3184, 2014 WL 5380938, at *7, 10 (E.D.N.Y. Oct. 22, 2014) (holding that the ALJ erred in according significant weight to the consultative physician's opinion that the plaintiff "was mildly limited in standing, walking, climbing, and bending due to left knee pain"). But see Brady v. Colvin, No. 14-CV-5773, 2016 WL 1448644, at *7-8 (E.D.N.Y. Apr. 12, 2016) (holding that the consultative physician's opinion that he plaintiff had "moderate limitation to long periods of sitting, standing, walking, and heavy lifting," was vague and did not support the residual functional capacity).

Here, Dr. Shtock described Plaintiff's limitations as "mild to moderate" or "moderate." (R. 269-70.) However, Dr. Shtock provided "additional clarifying information," see Tankisi, 521 F. App'x at 29, by indicating that Plaintiff has mild to moderate limitations standing or sitting for long periods, and moderate limitations with heavy lifting, squatting, kneeling, crouching, frequent stair climbing, walking long distances, and frequent bending. (R. 269.) Accordingly, Dr. Shtock's assessment is not "so vague as to render it useless in evaluating whether [Plaintiff] can perform sedentary work." Curry, 209 F.3d at 123.

The Court is also not persuaded by Plaintiff's argument that the ALJ erred in failing to consider Dr. Shtock's alleged lack of any reported board certifications. (Pl.'s Br. at 19.)

Cf. Gonzalez v. Callahan, No. 94-CV-8747, 1997 WL 279870, at *3, n.1 (S.D.N.Y. May 23, 1997) (noting that "other circuit courts have found the lack of a board certification an unconvincing and improper reason to deny credit to a doctor's opinion") (collecting cases). But see Cinnante v. Astrue, No. 09-CV-82328, 2010 WL 2976707, at *9 (S.D. Fla. Jun. 22, 2010), report and recommendation adopted, 2010 WL 2976704 (S.D. Fla. Jul. 20, 2010) (holding that the ALJ provided good reasons for discounting the consultative examiner's opinion and noting that the consultative examiner lacked "any particular expertise or board certification in the area of practice pertinent to Claimant's impairment(s)") (alteration in original).

However, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." Selian, 708 F.3d at 419. Indeed, regulations direct the ALJ to accord "limited weight" to the opinion of a consulting physician and "[o]nly when the treating physician's opinion is inconsistent with other substantial evidence in the record may a consultative physician's report constitute substantial evidence." Daniels v. Colvin, No. 14-CV-2354, 2015 WL 1000112, at *16 (S.D.N.Y. Mar. 5, 2015) (citation omitted). Here, the ALJ summarized Dr. Shtock's assessment and concluded, without elaboration, that she "accord[s] the opinion of

Dr. Shtock great weight as it is consistent with the records of the claimant's neurosurgeon, Dr. Cohen."  (R. 17.)

While Dr. Shtock appears to have reviewed x-ray results, he only met with Plaintiff on one occasion and his report does not indicate that he reviewed Plaintiff's medical records.  See Adesina, 2014 WL 5380938, at *10 ("[c]onsidering that Dr. Bellini was only a consulting examiner who examined Plaintiff on one occasion and who only conducted the most basic of clinical analysis in evaluating Plaintiff, there was no basis to give Dr. Bellini's opinions significant weight").  Cf. Tankisi, 521 F. App'x at 34 (affirming the ALJ's decision to accord "great weight" to the consulting physician's opinion where, inter alia, he met with the plaintiff twice, obtained a patient history, and conducted full physical examinations).

Moreover, Dr. Shtock's opinion is not necessarily consistent with Dr. Cohen's notes.  While Dr. Shtock assessed Plaintiff as suffering from "moderate" or "mild to moderate" limitations, as previously noted, Dr. Cohen's treatment notes speak to Plaintiff's post-surgery improvement but also indicate that Plaintiff continued to report pain, suffered from radiating leg pain in his right leg when "sitting for any length of time," and scored fifty-one percent or severe on the Oswestry Disability Index.  (R. 281, 283.)  Cf. Floyd, 2015 WL 2091871, at *8 (holding that the ALJ failed to adequately address why he accorded the non-

treating physician's opinion "significant weight" where the ALJ incorrectly noted that the non-treating physician's opinion was consistent with the podiatrist's opinion). Accordingly, the Court remands this matter for the ALJ to appropriately weigh the opinion of Dr. Shtock.

    B. Findings of the Medical Board

        While another governmental agency's decision that the claimant is disabled is not binding on the Commissioner, such a determination "is entitled to some weight and should be considered." Lohnas v. Astrue, 510 F. App'x 13, 13 (2d Cir. 2013) (internal quotation marks and citation omitted). See also Atwater, 512 F. App'x at 70 (noting that the Veteran's Administration's determination that the plaintiff was entitled to "individual unemployability benefits" was not binding but "entitled to some weight and should be considered"). The Southern District has held that the New York City police medical board's approval of a disability pension is "entitled to some weight" and the ALJ's failure to consider such determination constituted error. Visser v. Heckler, No. 83-CV-3479, 1986 WL 2205, at *5 (S.D.N.Y. Feb. 10, 1986). But see Lohnas, 510 F. App'x at 13 ("[b]ecause the Commissioner is not bound by another agency's disability determination and because the Commissioner's decision was supported by substantial evidence, any alleged failure by the ALJ

to consider fully the disability determination by the Department of Veteran's Affairs does not affect our decision to affirm").

The Commissioner concedes that the ALJ did not explicitly address the findings of the Medical Board, (Comm.'s Br. at 6), but argues, in relevant part, that she was not required to "'state on the record every reason justifying a decision,'" (Comm.'s Br. at 6 (quoting Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012)). However, the ALJ's decision fails to even reference to the Medical Board's decision and provides no indication that the Medical Board's decision was considered. While the Medical Board's decision is not binding, the Court finds that the ALJ erred by failing to consider the Medical Board's determination. Accordingly, the Court remands this matter to permit the ALJ to consider and place "some weight" on the Medical Board's decision.

C. RFC Assessment

Based on the Court's determination that remand is required regarding the weight placed on the opinions of Dr. Rubin and Dr. Shtock and to develop the record regarding Dr. Rubin's opinion, the Court need not address Plaintiff's argument that the ALJ's RFC assessment is not supported by substantial evidence. (Pl.'s Br. at 21-22.)

D. Credibility

Plaintiff alleges that the ALJ did not properly assess Plaintiff's credibility because she failed to address how Plaintiff's testimony "had an impact on . . . her credibility assessment." (Pl.'s Br. at 23.) Particularly, Plaintiff alleges that the ALJ failed to explicitly state that she relied upon Plaintiff's testimony in evaluating his credibility. (Pl.'s Br. at 23.) However, because the treating physician's opinion "is a significant part of the evidence that is weighed in determining credibility of a claimant under 20 C.F.R. § 404.1529," whether the ALJ properly assessed Plaintiff's credibility "can only be properly assessed after the correct application of the treating physician rule." Garner v. Colvin, No. 13-CV-4358, 2014 WL 2936018, at *10 (S.D.N.Y. June 27, 2014) (remanding to the Commissioner and directing that "the issue of credibility . . . be revisited on remand, and evaluated in light of the proper application of the treating physician rule and [the factors for evaluating credibility]"). Accordingly, the ALJ should readdress the issue of credibility on remand after properly applying the treating physician rule.

CONCLUSION

For the foregoing reasons, the Commissioner's motion (Docket Entry 11) is DENIED, Plaintiff's motion (Docket Entry 14) is GRANTED, and this action is REMANDED for further proceedings

consistent with this Memorandum and Order.  The Clerk of the Court

is directed to mark this matter CLOSED.

                                        SO ORDERED


                                        /s/ JOANNA SEYBERT_____
                                        Joanna Seybert, U.S.D.J.

Dated: August __15__, 2016
       Central Islip, New York